<u>NOT FOR PUBLICATION</u>                    [Dkt. Items 34]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

JUDITH MCCLEARY and TERRY
MCCLEARY,

             Plaintiffs,          Civil No. 09-2876 RMB/JS

   v.

                         **OPINION**

CITY OF WILDWOOD,

             Defendant.

Appearances:

      Eric G. Zajac
      Dominik Rostocki
      Zajac & Arias, LLC
      1818 Market Street
      30th Floor
      Philadelphia, PA 19103
          Attorneys for Plaintiffs

      Erin R. Thompson
      Powell, Birchmeier & Powell, Esqs.
      1891 State Highway 50
      P.O. Box 582
      Tuckahoe, NJ 08250-0582
          Attorneys for Defendant

**BUMB**, United States District Judge:

## I.   Introduction

     Defendant City of Wildwood (hereafter "Wildwood" or "the

City") moved for summary judgment on Plaintiffs' Complaint after

the deadline for dispositive motions set by the Court, and

Plaintiff moved to dismiss the motion as untimely.  The Court

granted Plaintiffs' motion and dismissed Wildwood's summary

judgment motion without prejudice.  See Dkt. Ent. 33.  Wildwood now moves pursuant to Federal Rule of Civil Procedure 6(b)(1)(B) for permission to file the summary judgment motion out of time.

To be clear, the Court does not condone filing motions after Court-issued deadlines, particularly where a moving party fails to seek an extension prior to missing the deadline.  Nonetheless, the Court does find that excusable neglect has been demonstrated and that equity warrants reinstating Defendant's summary judgment motion.[1]  For the reasons set forth below, the Court grants Defendant's motion to extend time to move for summary judgment, reinstates the motion as briefed and awards judgment in favor of the City, dismissing Plaintiffs' liability claims and derivative claim for loss of consortium.

## II.  Background

On the afternoon of June 13, 2007, Plaintiff Judith McCleary was walking on the Wildwood City boardwalk when she tripped and fell.  (Defendant's Statement of Undisputed Facts ("Def. SOF") ¶¶ 1-5; Plaintiffs' Statement of Undisputed Facts ("Pl. SOF") ¶¶ 1-3.  The fall occurred in front of Harry's Corner, a pizza restaurant, where the wooden walkway met the concrete walkway, causing the boardwalk to lie uneven.  Pl. SOF ¶ 4.

---

[1]The motion has already been fully briefed.  Plaintiffs' opposition to summary judgment, which included a response statement of facts, counter statement of facts, brief and exhibits, totals well-over 100 pages.

As a result of her fall, Ms. McCleary sustained serious injury, including a completely displaced radial head fracture of her left elbow and arm, requiring surgical repair.  Pl. SOF ¶¶ 5-6.  The surgery caused hardware to be placed in Ms. McCleary's arm, which in turn caused scarring.  Pl. SOF ¶ 6.  She "continues to have problems with the arm."  Id.

## III. Analysis

### A.   Excusable Neglect

As noted, the Court dismissed Defendant's original summary judgment motion due to Defendant's failure to request an extension pursuant to Rule 6(b)(1)(B).  See Drippe v. Tobelinski, 604 F.3d 778, 784-85 (3d Cir. 2010).  Before a court may consider an untimely motion for summary judgment, "a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect, under the Pioneer factors, before permitting an untimely motion."  Drippe, 604 F.3d at 785 (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 395 (1993)).

"Under Pioneer, the excusable neglect inquiry must consider 'all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice ..., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in

3

good faith.'"  Id. (quoting 507 U.S. at 395; citing In re O'Brien
Envtl. Energy, Inc., 188 F.3d 116, 125 n. 7 (3d Cir. 1999)
(Pioneer factors apply to all excusable neglect inquiries
mandated under the Federal Rules of Civil Procedure)).  As the
Supreme Court recognized, "[a]lthough inadvertence, ignorance of
the rules, or mistakes construing the rules do not usually
constitute 'excusable' neglect, it is clear that 'excusable
neglect' under Rule 6(b) is a somewhat 'elastic concept' and is
not limited strictly to omissions caused by circumstances beyond
the control of the movant."  Pioneer, 507 U.S. at 396.

Here, Defendant argues that it failed to act because of
excusable neglect.  Defendant contends that discovery delays
contributed to the untimeliness of its summary judgment motion.
Specifically, Defendant represents that the depositions of
Wildwood's representatives did not commence until May 21, 2010,
weeks after the Court's deadline for dispositive motions.
Indeed, although the Court ordered that the parties complete fact
discovery before March 1, 2010, it appears that neither party
adhered to the Court's scheduling Order.  Ms. McCleary's
deposition took place on March 10, 2010, and it does not appear
that either party requested that the Court extend the deadline
for fact discovery prior to its expiration.

Applying the Pioneer factors here, Plaintiffs fail to
articulate how they are prejudiced by permitting Defendant's

4

late-filed summary judgment.  Plaintiffs' proffer that they have diligently followed all deadlines is belied by the record.  As noted, depositions were scheduled after the fact discovery deadline, and there appears to have been some difficulty with scheduling Ms. McCleary's medical examination.  Plaintiffs further argue that the untimely motion caused Plaintiffs "to expend many hours filing responses and Motions."  To the contrary, Plaintiffs succeeded in requiring Defendant to request permission to file its motion out of time and otherwise appropriately responded to Defendant's motion for summary judgment.  Any prejudice visited on Plaintiffs by the untimely motion is minimal.

Moreover, as Plaintiffs correctly point out, Defendant missed the deadline for dispositive motions by fifty-three days. As for this delay's impact on judicial proceedings, the Court finds that entertaining a thoroughly briefed, albeit untimely, summary judgment motion serves the interest of judicial economy. Clearly, as asserted by Plaintiff, the filing delay was within Defendant's control.  However, as noted, extensions granted pursuant to Rule 6(b) are not limited strictly to omissions caused by circumstances beyond the control of the movant.  See Pioneer, 507 U.S. at 396.  Nothing in the record supports a finding that Defendant acted in bad faith by filing its summary judgment motion past the deadline.

5

In sum, the Court finds that the delays in discovery provided a reasonable basis for Defendant's failure to file timely for summary judgment.  The balance of the equities weighs in favor of extending the deadline for filing dispositive motions by some fifty-three days so as to consider the merits of Defendant's motion.

**B.  Summary Judgment**

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  Id. (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).  Upon such a showing, the burden shifts to the non-moving party to produce evidence of a genuine, factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-movant's burden is rigorous:  it "must point to

6

concrete evidence in the record that supports each and every essential element of his case"; mere allegations, conclusions, conjecture and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

When considering a summary judgment motion, the Court does not weigh evidence; rather, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine issue for trial. Anderson, 477 U.S. at 252. Summary judgment is appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide,'...." Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir.1989) (quoting Anderson, 477 U.S. at 265 (Brennan, J., dissenting)).

### 1.   Premises Liability

Wildwood seeks summary judgment in its favor, dismissing Plaintiffs' liability claims, by arguing that such claims are barred by the New Jersey Tort Claims Act ("NJTCA" or "the Act"). N.J. Stat. Ann § 59:1-1, et seq.  The City raises three

arguments:  (1) Plaintiffs failed to present evidence of a "dangerous condition" within the meaning of N.J. Stat. Ann. § 59:4-2; (2) the City had no notice of the alleged "dangerous condition," as required by statute; and (3) the City's actions with regard to the alleged "dangerous condition" were not "palpably unreasonable."

Plaintiffs seek to hold the City liable for injuries Judith McCleary suffered after falling on the Wildwood boardwalk.  To state their claim against the City, Plaintiffs must meet the requirements of the Tort Claims Act:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

N.J. Stat. Ann. § 59:4-2.  The New Jersey Supreme Court summarized the five, essential elements under this section:

in order to impose liability on a public entity pursuant to that section, a plaintiff must establish the existence of a "dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."

Polzo v. County of Essex, 196 N.J. 569, 579 (2008) (quoting

Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125

(2001)).

"The requirements of the Tort Claims Act are 'stringent' and place a 'heavy burden' on plaintiffs seeking to establish public entity liability." Charney v. City of Wildwood, 732 F.Supp.2d 448, 452-53 (D.N.J. 2010) (quoting Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 136 (1993)), appeal docketed, No. 10-3739 (3d Cir. Sept. 16, 2010). Indeed, "[a]ny application of the Tort Claims Act must start from its 'guiding principle,' that is, 'that immunity from tort liability is the general rule and liability is the exception.'" Polzo, 196 N.J. at 578 (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005)).

### a. Dangerous Condition

Wildwood essentially argues that because Mrs. McCleary cannot be certain where she actually fell on the boardwalk, she cannot establish the existence of a "dangerous condition." The Court is mindful that "[w]hether property is in a 'dangerous condition' is generally a question for the finder of fact." Vincitore, 169 N.J. at 123. New Jersey courts recognize,

9

however, that "[i]n certain circumstances, the question of a 'dangerous condition' must be resolved by the court as a matter of law" so as to ensure that "the 'legislatively-decreed restrictive approach to liability' is enforced." McCarthy v. Twp. of Verona, 2001 WL 1917169, at *2 (App. Div. April 16, 2001) (quoting Cordy v. Sherwin Williams Co., 975 F.Supp. 639, 643 (D.N.J. 1997)).  The question for the Court, then, "is whether reasonable minds could differ" as to whether the alleged condition was "'dangerous' as defined in the Act."  Id.

     The Act defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J. Stat. Ann. § 59:4-1(a). "The mere existence of a defect is insufficient to demonstrate a dangerous condition.  Only those defects that create a 'substantial risk of injury' are actionable under the Tort Claims Act." Moody v. City of Wildwood, 2005 WL 3693207, at *2 (App. Div. Jan. 24, 2006) (citing Polyard v. Terry, 160 N.J. Super. 497, 508 (App. Div. 1978), aff'd o.b., 79 N.J. 547 (1979), overruling on other grounds recognized in Piren v. City of Trenton, 2009 WL 2168319, at *3 (App. Div. July 22, 2009)).  "A 'substantial risk' is one that is 'not minor, trivial, or insignificant.'" Id. (quoting Polyard, 160 N.J. Super. at 509). The phrase "used with due care" is understood by courts to mean

10

"objectively reasonable" use.  <u>Garrison v. Twp. of Middleton</u>, 154 N.J. 282, 291 (1998).

At her deposition, Ms. McCleary identified the area of her fall from a photograph taken by relatives.[2]  Pl. Ex. A in Opp. to Summ. J. at 32:24-33:15.  The photograph, marked D-1, shows the boardwalk in front of Harry's Corner and illustrates the gap between the wood and concrete sections of the boardwalk.  Pl. Ex. C.  Ms. McCleary testified that she "assumed" her injury was caused by "the unevenness of the boardwalk," specifically "where the boards meet the concrete."  Pl. Ex. A at 34:18-25. Plaintiffs, however, do not offer any measurement or expert report detailing the unevenness between the wood and concrete sections of the boardwalk.  When asked at her deposition to estimate the degree of difference, Ms. McCleary could not do so. Pl. Ex. A at 35:1-9.  Although Plaintiff provides a photograph purporting to show the discrepancy between the wood and concrete portions of the boardwalk, <u>see</u> Pl. Ex. B, no other record evidence establishes the precise nature of this difference.  Nor have Plaintiffs provided any expert reports regarding the alleged dangerous condition.

---

[2]The photographs of the alleged defect were taken by Mrs. McCleary's relatives approximately two weeks after the fall. These relatives identified the alleged scene of the fall based on pictures taken the day of the accident by Mrs. McCleary's friend. <u>See</u> Pl. SOF ¶¶ 7-8.

Courts analyzing whether the conditions of walkways or road surfaces are "dangerous" within the meaning of the Tort Claims Act typically review measurements of the gap, crack or other surface defect said to have caused the plaintiff's injury.  <u>See</u>, <u>e.g.</u>, <u>Charney</u>, 732 F.Supp.2d at 456 (one and one-half inch deep, one and one-quarter inch wide triangular hole in boardwalk was not dangerous condition); <u>Mendelsohn v. Ocean City</u>, 2004 WL 2314819, at *6 (D.N.J. Oct. 12, 2004) (nail protruding one-quarter inch from boardwalk was not a dangerous condition); <u>Cordy</u>, 975 F.Supp. at 643 (five-eighth to seventh-eighths inch difference between road surface and railroad track crossing was not a dangerous condition); <u>Morey v. Borough of Wildwood Crest</u>, 2007 WL 2963324, at *1-2 (App. Div. Oct. 12, 2007) (jury found that three-eighths to one inch gap in sidewalk was a dangerous condition); <u>Atalese v. Long Beach Twp.</u>, 365 N.J. Super. 1, 5-6 (App. Div. 2003) (three-quarter inch difference in pavement, spanning entire block could be a dangerous condition); <u>McCarthy</u>, 2001 WL 1917169, at *2 (separation of approximately one to one and one-half inches and a raised sidewalk of somewhere between one-half to one and one-quarter inch was not a dangerous condition); <u>Polyard</u>, 160 N.J. Super. at 503-10 (three-eighths inch difference in road height was not a dangerous condition as defined by the Act).  Here, however, the photographs taken at the alleged scene by Ms. McCleary's relatives are the only record

evidence of the boardwalk's condition.  See Pl. SOF ¶ 7-8; Pl.
Ex. A at 31:16-32:34; Pl. Ex. B.

A review of these pictures demonstrates a height
differential between a concrete and wooden surface, albeit one of
undeterminable size.  Pl. Ex. B  One picture, identified as P-1,
is a close-up of the difference between the wood and concrete
planes.  A second picture, identified as D-1, shows the boardwalk
in front of Harry's Corner.  Id.  At her deposition, Ms. McCleary
used this picture to circle the precise location of her fall,
specifically the gap between the wood and concrete portions of
the boardwalk.  Id.; Pl. Ex. A at 33:9-15.  A third picture,
identified as D-3, illustrates the difference between the wood
and concrete planes as viewed in relation to an athletic shoe.
Pl. Ex. B.  Finally, a picture marked D-7 shows the gap between
the wood and concrete sections along the length of the boardwalk.
Id.

This limited evidence, viewed in a light most favorable to
Plaintiffs, is insufficient to permit a factfinder to conclude
that the alleged boardwalk surface gap constituted a dangerous
condition as defined by the Act, i.e., a condition giving rise to
a substantial risk of injury.  See Pazos v. Borough of
Sayerville, 2010 WL 3257800, at *3 (App. Div. Aug. 17, 2010)
(finding that plaintiff failed to demonstrate the existence of a
"dangerous condition" where "[n]o evidence of record

13

establishe[d] with any degree of certainty the nature of the 'hole' or "'depression' or 'gully' into which plaintiff stepped"); see also Barnabei v. City of Ocean City, 2006 WL 2933902, at *1-2 (App. Div. Oct. 16, 2006) (plaintiff who tripped on boardwalk failed to establish a "dangerous condition" where she testified that she did not view the "warped and misaligned" board and where "the board [w]as not otherwise . . . identified or described"). As noted, the mere existence of a pavement gap is insufficient to show a "dangerous condition," and there is nothing in the record demonstrating that the alleged gap was such that it gave rise to a substantial risk of injury.

The Court recognizes that walking was a reasonably foreseeable use of the area at issue, a factor to be considered in the dangerous condition analysis, see Atalese, 365 N.J. Super. at 6, but the lack of specific information regarding the alleged gap proves fatal to Plaintiffs' claims. Plaintiffs fail to provide the evidentiary foundation upon which a jury could find that the boardwalk's condition gave rise to a substantial risk of injury.

### b.   Notice

Plaintiffs also present no evidence that a "negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition" alleged by Plaintiffs. N.J. Stat. Ann. § 59:4-2(a).

Therefore, to succeed in their claim, Plaintiffs must demonstrate
that Wildwood "had actual or constructive notice of the dangerous
condition under section 59:4-3 a sufficient time prior to the
injury to have taken measures to protect against the dangerous
condition." N.J. Stat. Ann. § 59:4-2(b). Plaintiffs offer
nothing to show that the City had <u>actual</u> notice of the condition
identified, <u>i.e.</u>, "had actual knowledge of the existence of the
condition and knew or should have known of its dangerous
character." N.J. Stat. Ann. § 59:4-3(a). Thus, to sustain their
claim, Plaintiffs must establish that the City had <u>constructive</u>
knowledge of the boardwalk's condition.

The proofs required to show constructive knowledge of a
dangerous condition are outlined in the Tort Claims Act:

> A public entity shall be deemed to have constructive notice
> of a dangerous condition within the meaning of subsection b.
> of section 59:4-2 only if the plaintiff establishes that the
> condition had existed for such a period of time and was of
> such an obvious nature that the public entity, in the
> exercise of due care, should have discovered the condition
> and its dangerous character.

N.J. Stat. Ann. § 59:4-3(b). Plaintiffs point to the testimony
of Erwin Nase, Assistant Superintendent of Public Works for the
City, to demonstrate the City's constructive knowledge. Mr. Nase
testified that had the boardwalk's condition been reported, he
would have repaired the condition. Pl. Ex. C at 36:18-22 ("If
there was a collapse in the boardwalk in that nature it would
have been fixed and reported."); 38:17-19 ("Well, I would have

15

fixed it."); 39:20-23 ("If I would have got a complaint I would have fixed it.")

This testimony, however, does not establish that the City, exercising due care, <u>should</u> have known about the boardwalk's condition, and thus is irrelevant to the question of constructive notice.  Mr. Nase was merely reporting what the City would have done if a problem had been reported.  <u>See</u> <u>Polzo</u>, 196 N.J. at 580-81 ("[T]he deposition testimony of the County's assistant supervisor of roads to the effect that the County would have repaired the depression/declivity identified by plaintiff if it had been made known to the County is irrelevant to the question of whether the County had constructive notice of that dangerous condition.  That testimony addressed what the County would have done if it had actual notice of the depression/declivity, and not whether the County should have known of-that is, had constructive notice of-the condition of the shoulder at that location.").

Plaintiffs also cite the City's daily inspection of the boardwalk to infer that City inspectors should have known about the dangerous condition alleged by Plaintiffs because they had reviewed the accident scene.  In support of this proposition, Plaintiffs cite <u>Lodato v. Evesham Township</u>, 388 N.J. Super. 501 (App. Div. 2006) and <u>Roman v. City of Plainfield</u>, 388 N.J. Super. 527 (App. Div. 2006).  In <u>Lodato</u>, the record established that a raised sidewalk caused by a tree root had existed for almost

16

eighteen years.  388 N.J. Super. at 512.  Reversing the trial court, the Appellate Division held that a question of fact existed where "the evidence, when viewed most favorably for plaintiff, establish[ed] that individuals from the Township were in the immediate vicinity on at least two occasions and removed trees causing a similar condition adjacent to and on either side of the open and obvious condition that is the subject of this litigation."  Id.  In Roman, the Appellate Division held that, upon consideration of a motion for involuntary dismissal, the "plaintiff was entitled to an inference that the City had been aware for a decade that the roots of the City's tree were causing the sidewalk slab to be uplifted because the City's inspectors would have seen the uplift during their regular inspections."  388 N.J. Super at 532.

By contrast, Plaintiffs here offer nothing to establish that the boardwalk's condition existed for a significant period of time, as required by Section 59:4-3(b).  Nor have Plaintiffs pointed to any evidence suggesting that the City conducted repairs to conditions like the one identified by Plaintiffs elsewhere on the boardwalk.  Compare Charney, 732 F.Supp.2d at 453 (finding evidence that City had replaced boards on either side of the board identified as dangerous presented fact question regarding constructive notice).  More to the point, Plaintiffs fail to offer any evidence suggesting that the boardwalk's

unevenness was so obviously dangerous that knowledge of the condition should be imputed to the City.  As was noted in Polzo, "the mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'"  196 N.J. at 581 (quoting Sims v. City of Newark, 244 N.J.Super. 32, 42 (Law Div. 1990)).  Thus, in the absence of any evidence regarding the nature of the defect identified by Plaintiff, the Court is compelled to find that Plaintiffs failed to meet their burden as to notice as well.  See Barnabei, 2006 WL 2933902, at *2 (dismissing premises liability claim where plaintiff "provided no evidential foundation upon which a jury could premise a conclusion that constructive notice of the allegedly dangerous condition existed.").

### c.   Palpably Unreasonable Action

Plaintiffs' claim also fails because they have not established that the City's actions, or inactions, with regard to the alleged condition were palpably unreasonable.  Section 59:4-2 directs that "[n]othing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable."  Although the phrase "palpably unreasonable" is not defined in the Tort Claims Act, the New Jersey Supreme Court has interpreted the term to mean something beyond ordinary negligence:  "the term implies behavior that is

18

patently unacceptable under any given circumstance.... [F]or a public entity to have acted or failed to act in a manner that is palpably unreasonable, it must be manifest and obvious that no prudent person would approve of its course of action or inaction." Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)).

The question of whether an entity's action or inaction was "palpably unreasonable" is generally resolved by a jury. Charney, 732 F.Supp.2d at 457 (citing Vincitore, 169 N.J. at 130). Of course, "[l]ike any other fact question before a jury, [such determination] is subject to the court's assessment whether it can reasonably be made under the evidence presented." Mendelsohn, 2004 WL 2314819, at *6 (quoting Penny v. Borough of Wildwood Crest, 28 Fed. Appx. 137 (3d. Cir. 2002)). Several courts have found that a public entity's failure to repair surface defects was not "palpably unreasonable" as a matter of law. See Mendelsohn, 2004 WL 2314819, at *8 (city's maintenance of boardwalk was not palpably unreasonable); Baier v. East Brunswick Police Dept., 2010 WL 4025791, at *5 (App. Div. Aug. 12, 2010) (failure to repair sidewalk was not palpably unreasonable where no other injuries were reported and plaintiff did not notice defect); Akili-Obika v. City of Trenton, 2010 WL 3326718, at *5 (App. Div. Aug. 13, 2010) (failure to repair sidewalk was not palpably unreasonable where city had policy of

19

repairing sidewalk defects when reported); Gaskill v. Envt'l
Tech., Inc., 360 N.J. Super. 530, 537 (App. Div. 2003)
(township's failure to repair grate prior to accident was not
palpably unreasonable); Maslo v. City of Jersey City, 346 N.J.
Super. 346, 350-51 (App. Div. 2002) (failure to repair one-inch
difference in elevation between portions of city sidewalk was not
palpably unreasonable).

Here, Plaintiffs argue that the City's maintenance of the
boardwalk was palpably unreasonable for several reasons:  (1) the
City waited to address dangerous conditions until after an injury
occurred; (2) the City failed to hire workers whose exclusive
province was identifying and addressing dangerous conditions; (3)
the City failed to establish guidelines on how to identify
dangerous conditions; (4) the City failed to inspect the
boardwalk during daylight hours; (5) the City specifically failed
to identify and repair the condition that led to Ms. McCleary's
injury.  Plaintiffs, however, offer no evidentiary support for
any of these contentions.

Indeed, the record reflects that the City employed a
construction crew to conduct daily inspections and repairs of the
boardwalk between 7:00 a.m. and 2:00 p.m.  Def. Ex. B in Support
of Summ. J.  Plaintiffs offer nothing to demonstrate that the
City received reports of defects and failed to respond.  Given
the facts in evidence, or lack thereof, the Court cannot find

that Plaintiffs have met their burden in establishing that the City's maintenance of the boardwalk was palpably unreasonable.

## 2.   Loss of Consortium

Finally, the Court notes that, in addition to Plaintiffs' liability claims, the Complaint also states a claim for loss of consortium.  Defendant did not address the viability of Plaintiffs' claim in the event summary judgment was awarded in its favor.  The Court notes, however, that "[t]he right of the spouse to recover on a loss of consortium claim depends upon the existence of tortious conduct on the part of the defendants." Horvath v. Rimtec Corp., 102 F.Supp.2d 219, 236 (D.N.J. 2000) (citing Reilly v. Prudential Prop. & Casualty Ins., Co., 653 F.Supp. 725, 735 (D.N.J. 1987)).  Thus, based on the Court's finding that the City has not engaged in tortious conduct as a matter of law, Plaintiffs' claim for loss of consortium must be dismissed.

## IV.   CONCLUSION

For the aforementioned reasons, the Court grants Wildwood's motion to extend time to file for summary judgment and, upon consideration of the fully-briefed motion, finds Plaintiffs' claims to be deficient as a matter of law.  An appropriate Order will issue this date.


Dated: April 29, 2011          s/Renée Marie Bumb
                               RENÉE MARIE BUMB

UNITED STATES DISTRICT JUDGE